FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Jul 30, 2020

SEAN F. McAVOY, CLERK

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| JACKIE AKINS SR., CASSANDRA AKINS, and JACKIE AKINS JR.,<br><br>    Plaintiffs,<br><br>    v.<br><br>BRYAN ROBB, KRISHANA EVERETTE, RAUFU EVERETTE, SUMMER ABRAHAMSON, SPOKANE POLICE DETECTIVE GREGORY LEBSOCK, SPOKANE POLICE OFFICER D. BETTS, SPOKANE POLICE OFFICER J.C. ANDERSON, CITY OF SPOKANE, SPOKANE POLICE OFFICERS DOES 1-30,<br><br>    Defendants. | NO. 2:19-CV-00363-SAB<br><br><br><br>**ORDER GRANTING SPOKANE CITY DEFENDANTS' MOTION FOR SUMMARY JUDGMENT; DISMISSING STATE CLAIMS WITHOUT PREJUDICE** |

Before the Court are the City of Spokane Defendants' Motion for Summary Judgment, ECF No. 75; Defendants Bryant Robb and Krishana Everette's Motion for Summary Judgment, ECF No. 71; Plaintiffs' Motion to Dismiss, ECF No. 125; and Plaintiffs' Motion to Appoint Counsel, ECF No. 130. Plaintiffs are representing themselves in this matter. The City of Spokane Defendants' are

**ORDER GRANTING SPOKANE CITY DEFENDANTS' MOTION FOR SUMMARY JUDGMENT; DISMISSING STATE CLAIMS WITHOUT PREJUDICE ~ 1**

represented by Salvatore Faggiano and Nathaniel Odle. The Robb/Everette Defendants are represented by J. Scott Miller. The Court has reviewed the briefings and concluded that oral argument is not warranted. See LR7(3)(B)(iii).

## Motion Standard

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). There is no genuine issue for trial unless there is sufficient evidence favoring the non-moving party for a jury to return a verdict in that party's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). The moving party has the initial burden of showing the absence of a genuine issue of fact for trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). If the moving party meets its initial burden, the non-moving party must go beyond the pleadings and "set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 248.

In addition to showing there are no questions of material fact, the moving party must also show it is entitled to judgment as a matter of law. *Smith v. Univ. of Wash. Law Sch.*, 233 F.3d 1188, 1193 (9th Cir. 2000). The moving party is entitled to judgment as a matter of law when the non-moving party fails to make a sufficient showing on an essential element of a claim on which the non-moving party has the burden of proof. *Celotex*, 477 U.S. at 323. The non-moving party cannot rely on conclusory allegations alone to create an issue of material fact. *Hansen v. United States*, 7 F.3d 137, 138 (9th Cir. 1993).

When considering a motion for summary judgment, a court may neither weigh the evidence nor assess credibility; instead, "the evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson*, 477 U.S. at 255.

//

//

**ORDER GRANTING SPOKANE CITY DEFENDANTS' MOTION FOR SUMMARY JUDGMENT; DISMISSING STATE CLAIMS WITHOUT PREJUDICE ~ 2**

# Facts

On October 27, 2016, around 2 p.m., Spokane Police Officer Mathew responded to a call at 3407 W. Wellesley, which is where Defendants Bryan Robb and Krishana Everette live. Defendant Robb reported he found a bullet hole in his vehicle. Officer Matthew recovered a bullet from the inside the vehicle. Defendants Robb and Everette believed the shooting took place at approximately 1:45 a.m. earlier that day. They reported they had been having problems with their neighbors to the east. Police radio advised there was a report of several shots fired in this area around 1:33 a.m. on October 27, 2016.

Based on the location of the bullet hole, Officer Matthew concluded it was most likely fired from the east and the residence immediately east was Plaintiffs' residence at 3401 W. Wellesley. Because there was no conclusive evidence who fired the shots, no arrests were made.

The next day on October 28, 2020, a 911 call was made on 11:05 p.m. in response to a conflict between two neighbors. It was reported that multiple shots were fired. The caller indicated that the shooter lived at 3401 W. Wellesley, Plaintiffs' residence. The caller lived at 3407 W. Wellesley. When officers arrived, Plaintiff Jackie Akins, Sr. was in his front yard at 3401 W. Wellesley. Plaintiff Akins, Sr. was detained. He maintains the officers pointed guns at him. The officers dispute this.

Defendant Officer D. Betts handcuffed Plaintiff Akins, Sr., patted him down for weapons and placed him in the back of the police car. He was given a *Miranda* warning. After about an hour passed, Officer Betts removed the handcuffs but Plaintiff Akins, Sr. remained in the patrol car.

Plaintiff Akins, Sr. waived his right to be silent and told officers that he had driven his car west in the alley behind his house. There was a group of people in the alley blocking his path. The group was associated with his neighbors' house, 3407 W. Wellesley. After "exchanging words" with the group, Plaintiff continued

**ORDER GRANTING SPOKANE CITY DEFENDANTS' MOTION FOR SUMMARY JUDGMENT; DISMISSING STATE CLAIMS WITHOUT PREJUDICE ~ 3**

through the alley, circled the block and parked in the alley behind his house. He went inside, then heard gunshots. He came outside to look around and was then contacted by the officers. He told the officers that he was a convicted felon who was not allowed to possess firearms.

Plaintiff Akins Sr. gave consent for the officers to enter his home to search for anyone injured from the shooting. The officers ordered the occupants out of the house and cleared it. While doing so, they located a spent shell casing near the exterior stairwell to the basement of the house.

Plaintiff Jackie Akins Jr. was 19 years old at the time. He was interviewed by Officer LeQuire. He stated he was in his bedroom when he heard about seven gunshots. One of the bullets went through his bedroom window while he was still in his room. He had no other information, except he was aware the neighbors at 3407 W. Wellesley previously had their vehicle shot.

Plaintiff Cassandra Akins is Plaintiff Jackie Akins, Jr.'s mother. She lived at the residence. She was also interviewed by Officer LeQuire. She was in her bedroom and heard three gunshots that sounded like they were right next to her window. She told officers that she did not believe there were any firearms in the house.

Defendant Krishana Everette told Officer J. Arredondo that Plaintiff Akins, Sr. drove his car from the area behind his house, down the alley behind her house and stopped his car. When he stopped the car, Defendant Everett saw him with a handgun. He then continued through the alley, drove around the block, and pulled back into the area behind his house and parked his vehicle. Plaintiff Akins, Sr. then began shooting at the group. In response, Defendant Everette got a 9 mm Glock handgun and fired it about five or six times, straight up in the air. Plaintiff Adkins, Sr. then began to shoot at her house again. Six silver-colored 9 mm cartridges were found in the alley behind Ms. Everette's house.

Defendant Everette was placed under arrest for assault, based on her

**ORDER GRANTING SPOKANE CITY DEFENDANTS' MOTION FOR SUMMARY JUDGMENT; DISMISSING STATE CLAIMS WITHOUT PREJUDICE** ~ 4

1 admission to firing the gun and because officers found bullet holes in blue tarp that separated the residence. The bullet holes indicated that shots were fired from Defendant Everette's residence. She was booked into jail. However, Officer Arredondo believed that Everette was possibility covering for her husband, Defendant Bryan Robb because she told Officer Arredondo to tell her husband she wanted a divorce. Also, the physical evidence contradicted her statement that she fired the gun in the air.

Defendant Sunny Abrahamson is Defendant Krishana Everette's sister. She was interviewed by Officer Brown. She was outside in the alley behind the house when Plaintiff Akins Sr. drove by. His passenger window was down. Defendant Abrahamson walked up to the side of the car and asked him, "what's the problem?" She looked in the car and saw a black handgun. She ran inside and told the children, who were in the house, to go downstairs. She then heard multiple gunshots.

Defendant Raufu Everette stated he was visiting his sister, Defendant Krishana Everette and her husband, Defendant Robb. He was on the back patio when he heard two gun shots. He ran inside and heard more gun shots.

Janey Phea was in the basement. She is Raufu Everette's girlfriend. She was interviewed by Officer Brown. She heard the gunshots but did not see anything.

Defendant Bryan Robb told officers he was in the alley when Plaintiff Akins, Sr. drove up. He asked Akins Sr. if he had heard the gun shots from the other night and Akins, Sr. replied something to the effect of "maybe I do." Robb indicated he could see that Plaintiff Akins Sr. was holding a gun with his right hand. Robb said he then ran into the house, and then he heard gunfire. Robb denied shooting and said that at least a dozen gunshots were fired. When asked, he stated that apparently his wife shot the gun. Then everyone went inside and Defendant Everette called the police.

Defendant Robb indicated he was a convicted felon, but he did not possess

**ORDER GRANTING SPOKANE CITY DEFENDANTS' MOTION FOR SUMMARY JUDGMENT; DISMISSING STATE CLAIMS WITHOUT PREJUDICE ~ 5**

any firearms. He denied having a DVR in his house and he said there was no recording hard drive for his surveillance system. He explained that the security system "box" got "burned out" and the cameras loaded everything to the cloud. He gave the officers the password to his security system.

The officers collected the six 9 mm cartridge case found in the alley behind 3407 W. Wellesley. They concluded that shots were filed from the Robb/Everette house and a gunshot or shots were filed from Plaintiffs' residence as well.

Defendant Officer Gregory Lebsock showed up to the scene around 2:00 a.m. He started his investigation by looking at the residences. He contacted Defendant Robb about getting footage from the surveillance cameras. Robb said it was not available. Defendant Lebsock seized Robb and Everette's cell phones as evidence.

Defendant Lebsock then instructed the officers to release Plaintiff Akins, Sr. This may have been around 3:30 a.m. Plaintiff was not allowed to return to his house as the officers were preparing a search warrant to search the house. Officer LeQuire drove Plaintiffs to another residence so they could stay there instead.

Around 1 p.m. on October 28, 2016, Defendant Lebsock ran a criminal history check on Plaintiff Akins, Sr. that showed he had criminal history in California, South Dakota, Montana, and Washington. The record from Montana indicated he served a federal prison term for five years around 2005. This was a drug-related conviction. It showed he was also convicted in California for Robbery in 1989.

Defendant Lebsock then drafted affidavits and applied for search warrants to search Plaintiffs' residence (3401 W. Wellesley) and the Robb/Everette residence (3407 W. Wellesley). Spokane County Superior Court Judge Michael Price signed the warrants at 6 a.m. on October 29, 2016.

The search warrant for Plaintiffs' residence was executed at 8 a.m. During the search, Defendant Lebsock located a Nike shoebox that contained a 9 mm

**ORDER GRANTING SPOKANE CITY DEFENDANTS' MOTION FOR SUMMARY JUDGMENT; DISMISSING STATE CLAIMS WITHOUT PREJUDICE ~ 6**

1  Jimenez semiautomatic handgun, with cartridges in the magazine and one in the
2  chamber, two Glock .45 caliber magazine, one of which had the capacity for 26
3  cartridges and was full, and the other that contained no cartridges, seven 9 mm
4  cartridges, three plastic ammunition containers, and a black nylon bag containing
5  five 9 mm cartridge cases. Defendant Lebsock located three more 9 mm shell
6  casings in the rear exterior stairwell. He also located areas in Plaintiffs' house
7  where there were apparent bullet strikes.
8      Defendant Robb was then interviewed at the police station around 11:00
9  a.m. He said that he saw Defendant holding a handgun. Robb stated that Defendant
10 Abrahamson shouted, "he's got a gun" and Robb and Abrahamson ran into the
11 house. Thereafter, he heard gunfire. He denied possessing or firing a gun, but
12 disclosed he was a convicted felon prohibited from possessing firearms. He said he
13 was convicted of Child Rape and is a registered sex offender. He again said the
14 surveillance footage was only available on the "cloud."
15     Defendant Lebsock explained to Defendant Robb that he was going to
16 execute the search warrant regarding the video surveillance system. Defendant
17 Robb was returned to his house by Officer Gately.
18     While he was in the back of Officer Gately's car, Defendant Robb indicated
19 he wanted to speak with Defendant Lebsock again. He then confessed to
20 Defendant Lebsock that the DVR box was downstairs and footage from his
21 surveillance camera would show him, not Ms. Everette, firing the Glock in the air
22 the night before. He said the DVR from the surveillance system was hidden in his
23 furnace and a handgun possessed by Raufu Everette was hidden next to it. He was
24 placed under arrest.
25     Officers executed the search warrant at the Robb/Everette house. They found
26 a hard drive, along with a handgun and box of ammunition. As soon as the found
27 the gun, they backed out of the house while patrol kept the scene secure. Officer
28 Lebsock then prepared a third search warrant requesting authorization to seize the

**ORDER GRANTING SPOKANE CITY DEFENDANTS' MOTION FOR SUMMARY JUDGMENT; DISMISSING STATE CLAIMS WITHOUT PREJUDICE ~ 7**

1  handgun and ammunition from the furnace, as well as any other firearms and
2  ammunition located at the residence.
3        Detective Geren executed the third search warrant. Along with the handgun
4  and box of ammunition in the furnace, he found multiple handguns and rifle
5  ammunition at the residence.
6        In his Statement of Investigating Officer Affidavit of Facts, Defendant
7  Lebsock concluded there was probable cause to pursue charges against Defendant
8  Robb for two counts of First-Degree Assault based on the evidence that Plaintiffs
9  were in their house when Robb fired multiple rounds into the house, and probable
10 cause to pursue charges against Robb for two counts of First-Degree Unlawful
11 Possession of a Firearm.
12       A few days later, on November 3, 2016, Defendant Lebsock viewed the
13 footage from the Robb/Everette surveillance cameras. The footage showed that at
14 approximately 11:00 p.m. on October 26, 2016, Defendants Robb, Raufu Everette,
15 and Summer Abrahamson were standing in the alley behind the Robb/Everette
16 house, when Plaintiff Akins Sr.'s car approached. After approximately 20 seconds,
17 Plaintiff Akins, Sr. drove off and Defendant Abrahamson began to point excitedly
18 toward the car. It appeared to Defendant Lebsock that Defendant Abrahamson saw
19 the gun as she alleged and was reacting to it.
20       Thereafter, Defendants Robb and Raufu Everette emerged from the back of
21 the house into the view of the cameras and both were holding handguns. Defendant
22 Robb then fired at least four shots into the air. Defendant Raufu Everette pointed
23 his gun toward the Akins' house and fired multiple shots. It did not appear that
24 shots were being fired at them.
25       Because of the tarp across the fence between the two houses and the canting
26 of the security cameras there was no footage of what transpired on Plaintiffs'
27 property.
28       The next day, on November 4, 2016, Detective Lebsock submitted a second

**ORDER GRANTING SPOKANE CITY DEFENDANTS' MOTION FOR SUMMARY JUDGMENT; DISMISSING STATE CLAIMS WITHOUT PREJUDICE ~ 8**

1  Statement of Investigating Officer Affidavit of Facts setting out details to support a
2  finding of probable cause for the arrest of Plaintiff Akins, Sr and Defendant Robb.
3  He recommended 10 counts of First-Degree Unlawful Possession of Firearm
4  against Defendant Robb and one count of First-Degree Unlawful Possession of a
5  Firearm and Drive-by Shooting against Plaintiff Akins, Sr.
6       Defendant Lebsock believe there was probable cause to charge Plaintiff
7  Akins Sr. because he had a hand gun while in the car that he shot after he got out
8  of the car; the cartridge cases that were located on his property; a handgun and
9  multiple cartridges were located in his residence; and he had prior criminal history.
10      Defendant Lebsock did not find Plaintiff Akins Sr.'s version of events to be
11 credible. Plaintiff gave no explanation as to why he drove down the alley, circled
12 the block, and then returned home. He gave no explanation as to why spent casings
13 were found outside his basement door.
14      Defendant Lebsock arrested Plaintiff Akins Sr. on November 9, 2016. On
15 November 9, 2016, Spokane County Superior Court Judge Gregory Sypolt found
16 probable cause to believe Plaintiff Akins Sr. committed the offenses charged.
17 Plaintiff was not able to make bail until 30 days passed.
18      On December 15, 2016, the Spokane County Prosecuting Attorney filed an
19 Information charging Raufu Everette with two counts of First-Degree Assault. He
20 plead guilty on January 19, 2018 to one count of criminal mischief. On February
21 15, 2018, Defendant Robb pleaded guilty to one count of criminal mischief. The
22 charges against Plaintiff Akins, Sr. were dismissed.

**Plaintiffs' Complaint**

24      Plaintiffs filed suit on October 23, 2019 in the Eastern District of
25 Washington, asserting state claims against Defendants Bryan Robb, Krishana
26 Everette, Raufu Everette and Summer Abrahamson, and federal and state claims
27 against the City of Spokane Defendants. ECF No. 1. Plaintiffs filed their First
28 Amended Complaint on January 17, 2020, ECF No. 33. Plaintiffs filed their

**ORDER GRANTING SPOKANE CITY DEFENDANTS' MOTION FOR SUMMARY JUDGMENT; DISMISSING STATE CLAIMS WITHOUT PREJUDICE** ~ 9

Second Amended Complaint on June 15, 2020.

Plaintiffs are bringing state law claims of outrage, civil conspiracy, and malicious prosecution against Defendants Robb, Everette, and Abrahamson. Against the City of Spokane Defendants, they are bringing federal claim of unlawful detention, unlawful arrest, deliberate fabrication of evidence, wrongful prosecution, false information and material omissions in the search and arrest warrants, and judicial deception; and state law clams of malicious prosecution, outrage, and negligent supervision and retention.[1]

## Applicable Law

**1.   Section § 1983**

To state a claim under 42 U.S.C. § 1983, a plaintiff must show: (1) a violation of a right secured by the Constitution, and laws of the United States and (2) the alleged deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988).

**2.   Qualified Immunity**

Qualified immunity shields government officials from civil damages liability unless the official violated a statutory or constitutional right that was clearly established at the time of the challenged conduct. *Reichle v. Howard*, 566 U.S. 658, 664 (2012).

The court applies a two-prong analysis to determine whether officials are entitled to qualified immunity: (1) whether the facts alleged show that the officer violated a constitutional right; and (2) if so, whether that right was clearly established at the time of the event. *Rosenbaum v. Washoe Cnty.*, 663 F.3d 1071, 1075 (9th Cir. 2011). The linchpin of qualified immunity is the reasonableness of

---

[1] Plaintiff Akins, Sr. agrees that the Due Process and Equal Protections claims can be dismissed, as well as the claims based on respondeat superior and *Monell* liability.

ORDER GRANTING SPOKANE CITY DEFENDANTS' MOTION FOR SUMMARY JUDGMENT; DISMISSING STATE CLAIMS WITHOUT PREJUDICE ~ 10

the official's conduct. *Id.* (citing *Anderson v. Creighton*, 483 U.S. 635, 638–39 (1987)) ("[W]hether an official protected by qualified immunity may be held personally liable for an allegedly unlawful official action generally turns on the objective legal reasonableness of the action, assessed in light of the legal rules that were clearly established at the time it was taken." (emphasis added) (internal quotation marks and citations omitted)).

A plaintiff who seeks damages for violation of constitutional or statutory rights may overcome a defendant official's qualified immunity only by showing that those rights were clearly established at the time of the conduct at issue. *Davis v. Sherer*, 468 U.S. 183, 197 (1984).

**3. Probable Cause**

"Probable cause to arrest exists when officers have knowledge or reasonably trustworthy information sufficient to lead a person of reasonable caution to believe that an offense has been or is being committed by the person being arrested." *United States v. Lopez*, 482 F.3d 1067, 1072 (9th Cir.2007) (citing *Beck v. Ohio*, 379 U.S. 89, 91 (1964)). "The probable-cause standard is incapable of precise definition or quantification into percentages because it deals with probabilities and depends on the totality of the circumstances." *Maryland v. Pringle*, 540 U.S. 366, 371 (2003). Indeed, "probable cause is a fluid concept-turning on the assessment of probabilities in particular factual contexts-not readily, or even usefully, reduced to a neat set of legal rules." *Illinois v. Gates*, 462 U.S. 213, 232 (1983).

In determining whether probable cause exists to support a search warrant, the reviewing court looks to the "totality of the circumstances." *Id.* at 238. The task of the reviewing court "is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him . . . there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Id*. An affidavit must provide the reviewing court with a substantial basis for determining the existence of probable cause. *Id*. at 239.

**ORDER GRANTING SPOKANE CITY DEFENDANTS' MOTION FOR SUMMARY JUDGMENT; DISMISSING STATE CLAIMS WITHOUT PREJUDICE ~ 11**

### 4. Unlawful / Unreasonable Detention

The Fourth Amendment is not a guarantee against all searches and seizures, but only against *unreasonable* searches and seizures. *United States v. Sharpe*, 470 U.S. 675, 681 (1985) (emphasis in original). In *Terry v. Ohio*, the United States Supreme Court set out a two-step inquiry in determining whether an investigatory stop is reasonable: (1) whether the officer's action was justified at its inception; and (2) whether it was reasonably related in scope to the circumstances which justified the interference in the first place. 392 U.S. 1, at 20. An investigative detention must be temporary and last no longer than is necessary to effectuate the purpose of the stop. *Sharpe*, 470 U.S. at 684 (quoting plurality decision in *Florida v. Royer*, 460 U.S. 491, 500 (1983)). In assessing the length of the detention, courts should take into account whether the police diligently pursued a means of investigation that was likely to confirm or dispel their suspicions quickly during which time it was necessary to detain the defendant. *Id.* "A court making this assessment should take care to consider whether the police are acting in a swiftly developing situation, and in such cases the court should not indulge in unrealistic second-guessing." *Id.* If an investigative stop continues indefinitely, at some point it can no longer be justified as an investigative stop. *Id.*

### 5. Deliberate Fabrication of Evidence

The Fourteenth Amendment prohibits the deliberate fabrication of evidence by a state official. *Devereaux v. Abbey*, 263 F.3d 1070, 1074–75 (9th Cir. 2001) (en banc). Deliberate fabrication can be established by circumstantial evidence. *Id.* For example, evidence that officials "continued their investigation of [a person] despite the fact that they knew or should have known that he was innocent,'' can raise the inference that the investigator has an "unlawful motivation" to frame an innocent person. *Costanich v. Dep't of Soc. & Health Servs.*, 627 F.3d 1101, 1111 (9th Cir. 2010). Deliberate fabrication can be shown by direct evidence, for example, when "an interviewer . . . deliberately mischaracterizes witness

**ORDER GRANTING SPOKANE CITY DEFENDANTS' MOTION FOR SUMMARY JUDGMENT; DISMISSING STATE CLAIMS WITHOUT PREJUDICE ~ 12**

statements in her investigative report." *Id.* In cases involving direct evidence, the investigator's knowledge or reason to know of the plaintiff's innocence need not be proved. *Id.*

To prevail on a § 1983 claim of deliberate fabrication, a plaintiff must prove that (1) the defendant official deliberately fabricated evidence and (2) the deliberate fabrication caused the plaintiff's deprivation of liberty. *Id.* To establish the second element of causation, the plaintiff must show that (a) the act was the cause in fact of the deprivation of liberty, meaning that the injury would not have occurred in the absence of the conduct; and (b) the act was the "proximate cause" or "legal cause" of the injury, meaning that the injury is of a type that a reasonable person would see as a likely result of the conduct in question. *Spencer v. Peters*, 857 F.3d 789, 798 (9th Cir. 2017).

### 6. Unlawful Arrest

It is well established that "an arrest without probable cause violates the Fourth Amendment and gives rise to a claim for damages under § 1983." *Borunda v. Richmond*, 885 F.2d 1384, 1391 (9th Cir. 1988). An officer who makes an arrest without probable cause, however, may still be entitled to qualified immunity if he reasonably believed there to have been probable cause. *See Ramirez v. City of Buena Park*, 560 F.3d 1012, 1024 (9th Cir. 2009).

In the context of an unlawful arrest, then, the two prongs of the qualified immunity analysis can be summarized as: (1) whether there was probable cause for the arrest; and (2) whether it is reasonably arguable that there was probable cause for arrest—that is, whether reasonable officers could disagree as to the legality of the arrest such that the arresting officer is entitled to qualified immunity. *Rosenbaum*, 663 F.3d at 1076 (citing *Jenkins v. City of New York*, 478 F.3d 76, 87 (2nd Cir. 2007) (noting that an officer will not be entitled to qualified immunity "if officers of reasonable competence would have to agree that the information possessed by the officer at the time of arrest did not add up to probable cause")).

**ORDER GRANTING SPOKANE CITY DEFENDANTS' MOTION FOR SUMMARY JUDGMENT; DISMISSING STATE CLAIMS WITHOUT PREJUDICE ~ 13**

### 7. Material Misrepresentations – Judicial Deception

For a Fourth Amendment judicial deception claim to survive summary judgment, Plaintiffs must (1) make a substantial showing of the officer's deliberate falsehood or reckless disregard for the truth in preparing the affidavit and (2) establish that, but for the dishonesty, the searches and arrest would not have occurred. *Chism v. Wash. St.*, 661 F.3d 380, 387 (9th Cir. 2011) (quotation omitted). Clear proof of deliberation or recklessness is not required at the summary judgment stage. *Id.* If the plaintiff makes a substantial showing, the question of intent or recklessness is a factual determination that must be made by the trial of fact. *Id.* (quotation omitted).

"[I]f an officer submitted an affidavit that contained statements he knew to be false or would have known were false had he not recklessly disregarded the truth and no accurate information sufficient to constitute probable cause attended the false statements . . . he cannot be said to have acted in a reasonable manner, and the shield of qualified immunity is lost." *Id.* (quotation omitted).

In reviewing a search warrant on probable cause grounds, the district court, is "limited to the information and circumstances contained within the four corners of the underlying affidavit." *Crowe v. Cnty of San Diego*, 608 F.3d 406, 435 (9th Cir. 2010). The evidence in the affidavit need not necessarily be admissible but must be "legally sufficient and reliable." *Id.*

A misrepresentation in the affidavit constitutes a violation of the Fourth Amendment if the misrepresentation is material. *Franks v. Delaware*, 438 U.S. 154, 171–72 (1978). "The *Franks* standard, although developed in a criminal context, also defines the scope of qualified immunity in civil rights actions." *Branch v. Tunnell*, 937 F.2d 1382 (9th Cir. 1991).

Misrepresentations can be affirmative or based on omission. Affirmative misrepresentations are material only if there is no probable cause absent consideration of the misrepresented facts. *Id*. A misrepresentation based on an

**ORDER GRANTING SPOKANE CITY DEFENDANTS' MOTION FOR SUMMARY JUDGMENT; DISMISSING STATE CLAIMS WITHOUT PREJUDICE ~ 14**

omission is material only where the omitted facts "cast doubt on the existence of probable cause." *United States v. Garza*, 980 F.2d 546, 551 (9th Cir. 1992) (quotation omitted).

Thus, to determine whether a warrant was supported by probable cause, the court must exclude any misrepresentation contained in the supporting affidavits, add any information which was improperly omitted from the affidavits, and then determine whether the remaining information is sufficient to create probable cause. *Crowe*, 608 F.3d at 434.

8. **Malicious Prosecution**

In order to prevail on a § 1983 claim of malicious prosecution, a plaintiff "must show that the defendants prosecuted [him] with malice and without probable cause, and that they did so for the purpose of denying [him] equal protection or another specific constitutional right." *Freeman v. City of Santa Ana*, 68 F.3d 1180, 1189 (9th Cir. 1995). Malicious prosecution actions are not limited to suits against prosecutors but may be brought against other persons who have wrongfully caused the charges to be filed. *Galbraith v. Cnty. of Santa Clara*, 307 F.3d 1119, 1126–27 (9th Cir. 2002).

Ordinarily, the decision to file a criminal complaint is presumed to result from an independent determination on the part of the prosecutor, and thus, precludes liability for those who participated in the investigation or filed a report that resulted in the initiation of proceedings. *Awabdy v. City of Adelanto*, 368 F.3d 1062, 1067 (9th Cir. 2004) (citation omitted). However, the presumption of prosecutorial independence does not bar a subsequent § 1983 claim against state or local officials who improperly exerted pressure on the prosecutor, knowingly provided misinformation to him, concealed exculpatory evidence, or otherwise engaged in wrongful or bad faith conduct that was actively instrumental in causing the initiation of legal proceedings. *Id.* Thus, a plaintiff must be given the opportunity to rebut a prima facie finding of probable cause and he can do so by

**ORDER GRANTING SPOKANE CITY DEFENDANTS' MOTION FOR SUMMARY JUDGMENT; DISMISSING STATE CLAIMS WITHOUT PREJUDICE ~ 15**

showing that the criminal prosecution was induced by fraud, corruption, perjury, fabricated evidence, or other wrongful conduct undertaken in bad faith. *Id.*

## Analysis

### 1. Claims against Defendant Betts and Anderson

Plaintiff Akins Sr. argues his initial detention was extended beyond the scope of the initial inquiry, and as such, he was unlawfully detained. The Court finds that a reasonable jury would not find that Plaintiff's Fourth Amendment prohibition against unreasonable seizure was violated. The undisputed facts show that the officers pursued the investigation diligently in order to confirm or dispel their suspicions. Plaintiff was detained around 11:00 p.m. and was released around 3:30 a.m. It was reasonable to detain Plaintiff during this time because it was undisputed that witnesses said that Plaintiff Akins, Sr. had a gun and he told officers that he was prohibited from possessing a gun.

Moreover, even if these officers had violated Plaintiff's Fourth Amendment rights, it was not clearly established that detaining a possible shooting suspect for roughly four to five hours until an investigation was completed that involved numerous witnesses and physical evidence would violate the suspect's Fourth Amendment rights.

As such, summary judgment on the Fourth Amendment claims asserted against Defendant Betts and Anderson is appropriate.

### 2. Claims against Defendant Lebsock

After carefully reviewing the evidence and briefs submitted by the parties, the Court concludes that probable cause existed to search Plaintiffs' residence and to arrest Plaintiff Akins, Sr. for Unlawful Possession of a Firearm and Drive-by Shooting. Plaintiffs assert the statements made to the police officers by their neighbors were false and the officers knew it. It is true that some of the statements were false, *i.e.* who shot the gun, but there is nothing in the record to suggest that other statements made were false.

**ORDER GRANTING SPOKANE CITY DEFENDANTS' MOTION FOR SUMMARY JUDGMENT; DISMISSING STATE CLAIMS WITHOUT PREJUDICE ~ 16**

Plaintiff Akins, Sr. maintains he did not have a gun in the car when he drove down the alley. But witnesses stated they saw him with the gun and there was nothing that should have put the officers on notice at the time they took the statements that these witnesses were potentially lying. Moreover, the physical evidence suggested they were not lying. After reviewing the surveillance tape, it appeared to Defendant Lebsock that Sunny Abrahamson reacted as if she saw a gun in Plaintiff Akins, Sr.'s car.

Also, Plaintiff Akins, Sr. had no explanation as to why he drove down the alley, circled the block and then parked his car. Plaintiff Cassandra Akins stated that she heard three shots that sounded like they were outside her window, which suggested that the shots were fired from Plaintiffs' residence. A spent casing was found on Plaintiffs' property and Plaintiff Akins, Sr. did not provide an explanation as to how it got there. He fails to address that a handgun and ammunition were found in his house, as well as the additional 9 mm cartridge casings near his exterior basement stairs.

Moreover, the Affidavit included the incident from the day before when Defendant Robb and Defendant Everette reported that their car had been shot, reports to the police of several shots fired in the early morning hours and the investigating officer concluded that it was like the shots came from the direction of Plaintiffs' house.

It was reasonable for Defendant Lebsock to conclude that Plaintiff Akins, Sr. had a gun in his car and reasonable to conclude that he had shot at his neighbors' house. Thus, it was reasonable to include this information in his Affidavits. As the recitation of the facts above suggest, this was a serious incident with shots being fired in a residential neighborhood. There were many people involved, many people to interview and physical evidence that needed to be sorted out. Several officers responded and multiple interviews were conducted. Moreover, Defendant Lebsock informed the judge that officers were concerned that Defendant Everette

**ORDER GRANTING SPOKANE CITY DEFENDANTS' MOTION FOR SUMMARY JUDGMENT; DISMISSING STATE CLAIMS WITHOUT PREJUDICE ~ 17**

may have been covering for her husband, Defendant Robb, so the reviewing judge would have viewed her statements with appropriate skepticism.

In reviewing the totality of the circumstances, a reasonable jury could only reach one conclusion, namely that there was probable cause to issue the search warrant and arrest warrant. It is not necessary for Defendant Lebsock to prove beyond a reasonable doubt that a crime had been committed. Rather, the question is whether the Affidavits contained sufficient facts to find probable cause and they did.

Moreover, a reasonable jury could not conclude that Defendant Lebsock made material misrepresentations in his Affidavits that would have negated the existence of probable cause. It was reasonable for Defendant Lebsock to obtain, rely on, and report Plaintiff Akins Sr.'s criminal history that came from NCIC. Plaintiffs have not made a substantial showing of deliberate falsehood or reckless disregard for the truth. It is undisputed that prosecutors decided to file charges against Plaintiff Akins, Sr. for Drive-By Shooting and First-Degree Unlawful Possession of a Firearm, and Judge Sypold concluded that probable cause existed that Plaintiff Akins, Sr. committed the crimes. Plaintiff has not shown that Defendant Lebsock engaged in fraud, corruption, perjury, fabricated evidence, or other wrongful conduct undertaken in bad faith in order to convince the prosecutor to charge Plaintiff Akins, Sr.

Because there was probable cause to support both the search warrant and arrest warrant, summary judgment on the federal claims asserted against Defendant Lebsock is appropriate.

**Supplemental Jurisdiction**

Generally, federal courts have jurisdiction over state-law claims whenever the federal-law claims and state-law claims in the case "derive from a common nucleus of operative fact" and are "such that a plaintiff would ordinarily be expected to try them all in one judicial proceeding." *Carnegie-Mellon Univ. v.*

**ORDER GRANTING SPOKANE CITY DEFENDANTS' MOTION FOR SUMMARY JUDGMENT; DISMISSING STATE CLAIMS WITHOUT PREJUDICE ~ 18**

*Cohill*, 484 U.S. 343, 349 (1988) (quotation omitted). Federal courts must consider and weigh in each case, and at every stage of the litigation, the values of judicial economy, convenience, fairness and comity in order to decide whether to exercise jurisdiction over a case brought in that court involving pendent state-law claims. *Id.* "When the balance of these factors indicates that a case properly belongs in state court, as when the federal-law claims have dropped out of the lawsuit in its early stages and only state-law claims remain, the federal court should decline the exercise of jurisdiction by dismissing the case without prejudice." *Id.*

Here, because the only remaining claims are state law claim, the Court declines to exercise supplemental jurisdiction over these claims. The nature of the claims being asserted and the underlying facts regarding conflicts between neighbors indicate this case properly belongs in state court. As such, the Court will dismiss the state-law claims without prejudice.

Accordingly**, IT IS HEREBY ORDERED:**

1. The City of Spokane Defendants' Motion for Summary Judgment, ECF No. 75, is **GRANTED**, in part. The federal claims are dismissed with prejudice. The Court declines to exercise supplemental jurisdiction over the state law claims. The remaining state law claims are dismissed without prejudice.

2. Defendant Robb and Everette's Motion for Summary Judgment, ECF No. 71, is **DENIED, as moot**. The Court declines to exercise supplemental jurisdiction over the state law claims. The state law claims are dismissed with prejudice.

3. Plaintiffs' Motion to Dismiss, ECF No. 125, is **DENIED**, as moot.

4. Plaintiffs' Motion for Appointment of Counsel, ECF No. 130, is **DENIED**, as moot.

//
//

**ORDER GRANTING SPOKANE CITY DEFENDANTS' MOTION FOR SUMMARY JUDGMENT; DISMISSING STATE CLAIMS WITHOUT PREJUDICE ~ 19**

5. The District Court Executive is directed to enter judgment in favor of the City of Spokane Defendants and against Plaintiffs on the federal claims.

**IT IS SO ORDERED**. The District Court Executive is hereby directed to file this Order, provide copies to counsel, and **close** the file.

**DATED** this 30th day of July 2020.



*Stanley A. Bastian* (signature)

Stanley A. Bastian
Chief United States District Judge

ORDER GRANTING SPOKANE CITY DEFENDANTS' MOTION FOR SUMMARY JUDGMENT; DISMISSING STATE CLAIMS WITHOUT PREJUDICE ~ 20